## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ENRICO LANZA, | : | Civil No. 3:19-cv-2137 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| DR. MICHAEL MOCLOCK, *et al.*, | : | |
| | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

Plaintiff Enrico Lanza ("Lanza"), an inmate confined at the State Correctional

Institution, Coal Township, Pennsylvania ("SCI-Coal Township"), commenced this action

pursuant to 42 U.S.C. § 1983.  (Doc. 1).  Named as Defendants are Debra Carnuccio,

Trisha Kelley, Anthony Luscavage, Blanche Milo, William Nicklow, Karen Merritt-Scully,

Joseph J. Silva, Dorina Varner, John Wetzel, and the Pennsylvania Department of

Corrections (collectively, "the Corrections Defendants"), Michael Moclock, M.D., and

Wexford Services.  Before the Court are two Rule 12(b) motions (Docs. 18, 24) to dismiss

filed by the Corrections Defendants and Defendant Moclock, respectively.  Lanza failed to

respond to Defendants' motions and the time for responding has now passed.[1]  Therefore,

the motions are deemed unopposed and ripe for resolution.  For the reasons set forth

---

[1] Lanza was directed to file a brief in opposition to Defendants' motions and was admonished that failure to file an opposition brief would result in Defendants' motions being deemed unopposed.  (Doc. 26) (citing M.D. PA. LOCAL RULE OF COURT 7.6).  (*See also* Doc. 6, Standing Practice Order in Pro Se Plaintiff Cases, at 2).

below, the Court will grant each pending motion.  The Court will also dismiss the action

against Wexford Services pursuant to Federal Rule of Civil Procedure 4(m).

## I.      Allegations of the Complaint

Lanza alleges that he slipped and fell on a patch of ice on December 17, 2017.

(Doc. 1, p. 10).  After he fell, Lanza was transported to the infirmary and a nurse gave him

Motrin for his pain.  (*Id.*).  The next day, Lanza underwent an x-ray of his left shoulder.  (*Id.*).

He subsequently experienced numbness in his legs and feet, and pain in his back and legs.

(*Id.*).

On or about January 3, 2018, Lanza, who underwent back surgery in 2016, was

examined by Dr. Monsalud in the medical department.  (*Id.*).  Dr. Monsalud opined that

Lanza had sustained nerve damage, and she ordered a cane, Motrin, and Baclofen.  (*Id.*).

Lanza found these treatments helpful.  (*Id.*).  Dr. Monsalud also recommended an

electromyography ("EMG") test.  (*Id.*).

A few days later, Lanza was treated in the medical department by a physician

assistant and was prescribed Prednisolone.  (*Id.*).  He states that this medication did not

help the pain in his lower back, upper legs, and shoulder.  (*Id.*).

On January 16, 2018, Defendant Dr. Moclock treated Lanza and prescribed Pamelor

for pain.  (*Id.*).  Lanza asserts that Pamelor did not relieve his pain, but it helped him sleep

at night.  (*Id.*).  He was also given Toradol injections for his back, leg, and shoulder pain, but

they did not help alleviate his pain.  (*Id.* at p. 11).

2

On February 19, 2018, Defendant Dr. Moclock discontinued or declined to renew the order for a cane. (*Id.*). Although Lanza believes that he needed the cane for stability, Defendant Dr. Moclock did not believe it was medically necessary. (*Id.*).

On April 11, 2018, Lanza was transported to Geisinger Hospital and underwent an MRI. (*Id.*). Several weeks later, Dr. Monsalud informed Lanza that the MRI was negative for any injuries. (*Id.*). Dr. Monsalud opined that Lanza's back and leg pain may be due to the back surgery he underwent in 2016. (*Id.*). Dr. Monsalud reordered a cane and Baclofen, and again recommended an EMG test. (*Id.*). However, Defendant Dr. Moclock subsequently determined that Baclofen was not appropriate. (*Id.* at p. 12). Lanza continued to have use of the cane through October 26, 2018. (*Id.*).

During this time period, Lanza was also treated by a neurosurgeon outside of the prison. (*Id.*). Lanza asserts that Defendant Dr. Moclock did not order the pain medications recommended by the off-site physician. (*Id.*).

On November 30, 2018, Lanza received more injections at Geisinger Hospital. (*Id.*). Lanza states that he continued to fall several times and continued to experience pain. (*Id.*).

In January 2019, he was again treated by the neurosurgeon outside of the prison. (*Id.*). The neurosurgeon explained that injections are not always effective in relieving pain, and recommended a second back surgery, a cane, back brace, and pain medication. (*Id.*). He also advised Lanza to stop smoking so that his nerves could heal properly. (*Id.*).

Defendant Dr. Moclock determined that a cane and back brace were not necessary, and he ordered celecoxib. (*Id.* at p. 13). Lanza states that he does not want this particular medication because he does not believe that it is appropriate for him due his mild liver cirrhosis. (*Id.*).

Lanza states that, since February 2019, he has refused to go to the medical department, and he will not go to the medical department until Defendant Dr. Moclock is no longer the Medical Director at SCI-Coal Township. (*Id.*).

At the time he filed his complaint, Lanza states that he has no pain medication or cane and has not undergone surgery. (*Id.*). He continues to experience pain and a diminished quality of life. (*Id.*). Lanza also alleges that Defendant Dr. Moclock is retaliating against him because he previously filed another civil lawsuit against him. (*Id.*).

Lanza asserts that he filed several grievances and requests to Defendant Karen Merritt-Scully, the healthcare administrator. (*Id.* at p. 12). He states that all grievances and requests have been denied. (*Id.*). Lanza also states that his now-deceased sister emailed a letter to Defendant Wetzel regarding Lanza's medical care at SCI-Coal Township. (*Id.* at p. 8).

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   The Corrections Defendants' Motion

### A.   Federal Rules of Civil Procedure 8 and 20

The Corrections Defendants first argue that Lanza's complaint must be dismissed for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. (Doc. 22, pp. 5-6). Federal Rule of Civil Procedure 8 establishes the general rules of pleading. *See* FED. R. CIV. P. 8. Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(d)(1) speaks to factual allegations, requiring that "[e]ach allegation . . . be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). These rules task the Plaintiff to provide "the defendant

notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at

(3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555). This standard requires more than legal

labels and conclusory assertions: a complaint must include enough facts to "raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555.

Lanza's complaint against the Corrections Defendants fails to meet these basic

pleading requirements. The complaint is relatively concise. The problem is that the factual

narrative fails to identify any of the allegedly responsible Corrections Defendant at all, other

than a brief reference to Defendants Merritt-Scully and Wetzel. The only claim against

Defendant Merritt-Scully concerns her role in the grievance process. (Doc. 1, p. 12). The

only reference to Defendant Wetzel is Lanza's statement that his late sister emailed a letter

to Wetzel. (*Id.* at p. 8). As to the seven other Corrections Defendants—Carnuccio, Kelley,

Luscavage, Milo, Nicklow, Silva, and Varner—the complaint offers no allegations

whatsoever.

The complaint sets forth constitutional violations but fails to clearly link any of the

theories to the Corrections Defendants. In sum, Lanza's complaint against the Corrections

Defendants "l[eaves] the defendants having to guess what of the many things discussed"

constitute causes of action, the legal theory on which those causes may rest, and the

Defendants against whom each cause is lodged. *Binsack v. Lackawanna Cty. Prison*, 438

F. App'x 158, 160 (3d Cir. 2011) (nonprecedential). Lanza's complaint thus fails to comply

with Rule 8.

Rules 18 and 20 of the Federal Rules of Civil Procedure explain the circumstances in which multiple claims and multiple Defendants may be joined.  Rule 18 states that a party "may join . . . as many claims as it has against an opposing party."  FED. R. CIV. P. 18(a). Thus, when an action involves only one Defendant, a Plaintiff may assert every claim he has against that Defendant, regardless of whether the claims are factually or legally related to one another, subject only to the limits of federal subject-matter jurisdiction.  *See* 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1582 (3d ed. 2019); *see also* FED. R. CIV. P. 18(a).

When a Plaintiff seeks to assert claims against *multiple* Defendants, however, Rule 20 also comes into play.  *See* WRIGHT & MILLER, *supra*, § 1655.  Rule 20 governs permissive joinder of parties and explains that a Plaintiff may only join multiple Defendants in a single case if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action."  FED. R. CIV. P. 20(a)(2).  In other words, notwithstanding the broad joinder-of-claims language of Rule 18(a), a Plaintiff may join multiple Defendants in a single complaint only if he asserts at least one claim linking *all* Defendants that (1) arises out of the same transaction or occurrence and (2) involves a common question of law or fact.  *Id.*; WRIGHT & MILLER, *supra*, § 1655.  That is, there must be at least one common claim against all named Defendants.  Once a Plaintiff satisfies this requirement, he may invoke

Rule 18 to assert "as many claims as [he] has" against one or more Defendants, even if

those additional claims are unrelated to the common claim linking all Defendants. *See* FED.

R. CIV. P. 18(a); WRIGHT & MILLER, *supra*, § 1655.

Lanza's complaint appears to violate Rule 20. As stated, the complaint fails to set

forth any allegations against Defendants Carnuccio, Kelley, Luscavage, Milo, Nicklow, Silva,

and Varner. The only allegation against Defendant Merritt-Scully concerns her role in the

grievance procedure, and the only reference to Defendant Wetzel is that an email was sent

to him. Without any allegations against the majority of the Corrections Defendants, Lanza

has failed to properly link all Defendants, which include the Department of Corrections itself,

the Secretary of the Department of Corrections, Facilities Management personnel, the

Director of Health Care Services, a Health Care Administrator, and nurses.[2]

Beyond this threshold concern, there are separate, and independent, substantive

flaws with Lanza's claims against the Corrections Defendants. These deficiencies are

discussed below.

### B.   Conspiracy Claim

The Corrections Defendants argue that Lanza's conspiracy claim must be dismissed.

(Doc. 22, pp. 6-7). In order to demonstrate a conspiracy, "a plaintiff must show that two or

---

[2]   Noncompliance with Rule 20 is particularly problematic in cases under the Prison Litigation Reform Act of 1995 ("PLRA"). The PLRA substantially changed judicial treatment of prisoner civil rights actions. Specifically, under the PLRA, the full filing fee must ultimately be paid in a non-habeas action. Allowing a prisoner to include a plethora of independent claims in a civil action without making the required connection among joined defendants under Rule 20 would circumvent the filing fee requirement of the PLRA.

more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." Id.

Lanza concluded that the Corrections Defendants have conspired to violate his rights, yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Corrections Defendants to achieve this conspiracy. (*See* Doc. 1). Lanza cannot rely on unsupported claims of conspiracy. In a conclusory fashion, the complaint states that, "the following people are the ones who conspired to manipulate the grievance system . . ." (Doc. 1, p. 8). Without a factual showing which gives some substance to this conspiracy claim, Lanza's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a

conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding

that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and

unsupported speculation are properly dismissed under § 1915(d)).

Absent any allegations which would reveal the existence of an agreement designed

to deny the constitutional rights of Lanza, he cannot maintain his conspiracy claim. *See*

*Hodge v. United States*, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing plaintiff's

"broad" conspiracy claim because "he does not aver facts sufficient to establish an

agreement between the individual defendants to deprive plaintiff of his rights or from which

such an agreement could reasonably be inferred").

### C.    Lack of Personal Involvement

The Corrections Defendants next argue that the complaint against them must be

dismissed based on Lanza's failure to properly allege their personal involvement in the

alleged wrongs.  (Doc. 22, pp. 7-10).  The only allegation against any of the Corrections

Defendants is Lanza's claim that Defendant Merritt-Scully, a Corrections Health Care

Administrator, denied his grievances and requests.  (Doc. 1, p. 12).  Lanza does not allege

that Defendant Merritt-Scully was involved in his medical care.  Nor does he set forth any

allegations whatsoever against the other named Corrections Defendants.[3]

---

[3]    As stated *supra*, the only reference to Defendant Wetzel is that Lanza's now-deceased sister sent an email to him.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

To the extent that Lanza attempts to hold Defendant Merritt-Scully liable based on her role in reviewing inmate requests and grievances, this claim fails. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal

involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).  In accordance with the foregoing, any attempt by Lanza to establish liability against Defendant Merritt-Scully based upon her handling of inmate request slips and grievances does not support a constitutional claim.  *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).

> ### D.    The Department of Corrections is not a Proper Party

Lastly, the Corrections Defendants argue that the Department of Corrections is not a proper defendant in a section 1983 civil rights action.  (Doc. 22, p. 10).  Section 1983 creates a cause of action against every "person" who under color of state law deprives an individual of a right secured by the Constitution or federal statute.  *See* 42 U.S.C. § 1983. The Department of Corrections is not a "person," who may be subjected to a lawsuit under § 1983 and will be dismissed as a defendant in this action.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state agencies not subject to suit under § 1983).

IV.   **Defendant Moclock's Motion**

A.   **Deliberate Indifference Claim**

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).  A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment.  *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988);

*see also White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

The complaint reveals that Lanza received a multitude of treatments for his back, leg, and shoulder pain.  Specifically, he was prescribed Motrin, Baclofen, Prednisolone, Palemor, Celecoxib, received Toradol injections, had intermittent use of a cane, underwent an x-ray and MRI, and was treated by medical professionals at SCI-Coal Township and at an outside hospital.  Lanza acknowledges that Defendant Moclock treated him for his pain and prescribed various medications.  Thus, by Lanza's own account, he received medical treatment and medication at SCI-Coal Township and was transported to an outside hospital on several occasions for further treatment.

To the extent that Lanza disagrees with Defendant Moclock's decisions to provide certain medications and medical treatments, such disagreement does not give rise to a constitutional claim given the considerable latitude afforded prison authorities in the treatment of prisoners.  Though he may have preferred a different medication or treatment, such disagreement is not enough to state a § 1983 claim.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); *Gause v. Diguglielmo*, 339 F. App'x 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation).  This is particularly true in light of the fact that there are no allegations in the complaint that Defendant Moclock intentionally withheld

medical treatment from Lanza in order to inflict pain or harm upon him.  *See Farmer*, 685 F.

Supp. at 1339; *Rouse*, 182 F.3d at 197.  Furthermore, Lanza does not allege that the

prescribed medication resulted in any risk of harm to his health.  Rather, Lanza simply

alleges that certain medication was not as effective as others in managing his pain.

The allegations in Lanza's complaint amount to nothing more than his subjective

disagreement with the treatment decisions and medical judgment of Defendant Moclock.

*See Carpenter v. Kloptoski*, No. 08-CV-2233, 2012 WL 983565, at *6 (M.D. Pa. Mar. 22,

2012) (citing *White*, 897 F.2d at 110) (observing that "a prisoner's subjective dissatisfaction

with his medical care does not in itself indicate deliberate indifference").  Claims of medical

malpractice and disagreements as to the proper course of medical treatment simply do not

suffice to satisfy the deliberate indifference standard.  *See Monmouth Cty.*, 834 F.2d at 346;

*see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has

received some care, inadequacy or impropriety of the care that was given will not support

an Eighth Amendment claim.").  Courts will not second guess whether a particular course of

treatment is adequate or proper.  *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir.

1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

Based on the foregoing, Lanza's complaint fails to articulate a plausible Eighth Amendment

claim.  Defendant Moclock's motion will be granted in this regard.

## B.     Retaliation Claim

Lanza also alleges that Defendant Moclock refused to provide him with the desired medical treatment in retaliation for filing a previous lawsuit against him.  (Doc. 1, p. 13).  The First Amendment offers protection for a wide variety of expressive activities.  *See* U.S. CONST. amend I.  These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987).  Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah*, 229 F.3d at 225).

The Court finds that Lanza satisfies the first element of the *Rauser* test by alleging that he was engaged in constitutionally protected activity—the exercise of his right under the First Amendment to file a civil lawsuit.

In analyzing the second element of *Rauser*, however, Lanza must show that there was an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  *Rauser*, 241 F.3d at 333.  In accepting as true all factual allegations

set forth in the complaint, the Court finds that Lanza fails to meet the second *Rauser* element.  Lanza has not demonstrated that he suffered an adverse action at the hands of Defendant Moclock.  Rather, Lanza's own statements in the complaint reveal that he was offered several medical treatments for his back, leg, and shoulder pain, but that he is simply dissatisfied with the treatment provided and refuses any further medical care.  Further, it is clear that Lanza was not deterred by any alleged adverse actions because he proceeded to file the instant lawsuit.  This demonstrates that Lanza was not discouraged from exercising his First Amendment rights, but rather continued to do so.

With respect to *Rauser*'s third prong, Lanza fails to demonstrate that his previous lawsuit was a substantial or motivating factor in Defendant Moclock's medical decisions.  Nor has he shown an "usually suggestive" proximity in time or "a pattern of antagonism coupled with timing" between the filing of the lawsuit and his medical treatment.  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  For these reasons, the Court will grant Defendant Moclock's motion to dismiss the retaliation claim.

## V.   **Federal Rule of Civil Procedure 4(m)**

Rule 4(m) sets forth the following time frame a plaintiff has to serve a defendant with the summons and copy of the complaint:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  Defendant Wexford Services was named in the complaint that was

filed on December 12, 2019 and, to date, has not been served in this case.  The Court must

engage in a two-step process in determining whether to dismiss the non-served Defendant

or grant Lanza additional time to effect service.  "First, the district court should determine

whether good cause exists for an extension of time.  If good cause is present, the district

court must extend time for service and the inquiry is ended.  If, however, good cause does

not exist, the court may in its discretion decide whether to dismiss the case without

prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298,

1305 (3d Cir. 1995).  Good cause requires good faith on the part of the party seeking an

enlargement and some reasonable basis for noncompliance with the time specified in the

rules. *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995).  In

determining whether good cause exists, a court's "primary focus is on the plaintiff's reasons

for not complying with the time limit in the first place." *Id.*  Although prejudice is a factor to

be considered, the absence of prejudice to the opposing party alone does not constitute

good cause to excuse late service. *Id.*

In the present matter, the Court issued an Order directing Lanza to show cause why

the action against Wexford Services should not be dismissed pursuant to Federal Rule of

Civil Procedure 4(m).  (Doc. 27).  Lanza failed to respond to the Court Order and his *pro se*

status is not good cause to excuse his failure to timely serve this Defendant. *Veal v. United*

*States*, 84 F. App'x 253, 256 (3d Cir. 2004).  Based upon the lack of any reasonable

explanation for his failure to adhere to the requirements of Rule 4, the Court finds that Lanza failed to establish good cause.

If a plaintiff cannot show good cause for his failure to serve the defendant within ninety days, a district court may either dismiss the defendant, or exercise its discretion to order that service be made within a specific time. *Petrucelli*, 46 F.3d at 1305; *see also* FED. R. CIV. P. 4(m). It is Lanza's responsibility to properly identify all Defendants, and provide accurate mailing addresses for the Defendants, in a timely fashion. (*See* Doc. 8 ¶ 7) (advising Lanza that failure to properly name a Defendant, or provide an accurate mailing address for a Defendant, may result in dismissal of the claims against that Defendant pursuant to Federal Rule of Civil Procedure 4(m)).

In light of Lanza's lack of good faith effort to serve Wexford Services despite this Court's warning of the possible consequences, including dismissal, the Court concludes that dismissal is appropriate under the present circumstances. Accordingly, Defendant Wexford Services will be dismissed from this action.

## VI.     **Leave to Amend**

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons

outlined above, Lanza's claims against the Defendants are legally and factually flawed and

thus incurable. Moreover, Lanza failed to file a brief in opposition to Defendants' motions to

dismiss. Therefore, the Court concludes that curative amendment would be a futile

endeavor.

## VII.   Conclusion

The Court will grant Defendants' motions (Docs. 18, 24) to dismiss. The Court will

also dismiss the action against Wexford Services pursuant to Federal Rule of Civil

Procedure 4(m). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August ___, 2020